Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

February 12, 2026

**VIA ECF**

Honorable Jeannette A. Vargas
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Optimum Commc'ns, Inc. v. Apollo Cap. Mgmt., L.P.*, No. 25-cv-9785 (S.D.N.Y.)

Dear Judge Vargas:

The Court should deny Defendants' motion (Dkt. 63, "Mot.") to stay discovery pending their motion to dismiss. "It is not the Court's practice" to grant such stays, Indiv. Civ. Rules § 6(A), and Defendants have no good reason to depart from that practice here. *See*, *e.g.*, Memo Endorsement, *Troell v. Binance Holdings Ltd.*, No. 24-cv-07136 (S.D.N.Y. Apr. 28, 2025) (Dkt. 84) (Vargas J.) (denying consent stay motion); Order, *Graham v. UMG Recordings, Inc.*, No. 25-cv-0399 (S.D.N.Y. Apr. 2, 2025) (Dkt. 32) (Vargas, J.) (denying stay).

Optimum sued eight named defendants ("Defendants") and various yet-to-be-identified Doe Entities for orchestrating a "horizontal group boycott among rival creditors to freeze Optimum out of the U.S. credit market." Compl. (Dkt. 1) ¶ 1. After timely completing a Rule 26(f) conference, Optimum served ten targeted requests for production aimed at foundational aspects of the alleged antitrust conspiracy. *See* Dkt. 63-1. Based on opposing counsel's representation that "no named Defendant can provide a list of the other members of the coop," Dkt. 63-4 at 5, Optimum also served a single request for production on two third parties seeking "[d]ocuments sufficient to show all current and former members of the Cooperative," Dkt. 63-2. Defendants declined to counter with any proposal for more limited discovery. *See* Dkt. 63-4 at 3.

"[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Marsh & McLennan Agency, LLC v. Alliant Ins. Serv's, Inc.*, 2025 WL 1616872, at *1 (S.D.N.Y. June 6, 2025) (Vargas, J.). Defendants must instead show "good cause" for a stay. *Bennett v. Cuomo*, 2023 WL 2021560, at *1 (S.D.N.Y. Feb. 15, 2023). Good cause considers whether (1) Defendants make a "strong showing that the plaintiff's claim is unmeritorious"; (2) the "breadth of discovery" sought; and (3) "the risk of unfair prejudice to the party opposing the stay." *Marsh & McLennan*, 2025 WL 1616872, at *1. Defendants flunk each criterion.

**I.   Defendants Fail to Make a "Strong Showing" the Claims are Unmeritorious.**

Defendants fall well short of a "strong showing" that Optimum's claims should be dismissed on the pleadings. *Id.* "[A] motion for a stay is not a vehicle for jumping the queue to receive a preliminary ruling on a motion to dismiss." *Cambridge Cap. LLC v. Ruby Has LLC*, 2021 WL 2413320, at *2 (S.D.N.Y. June 10, 2021). Rather, the Court should grant a stay only if it can "say that [Optimum's claims] on their face are utterly devoid of merit." *Nielsen Co. (US) LLC v. TVSquared LTD*, 2023 WL 4363005, at *1 (S.D.N.Y. July 6, 2023); *see Golightly v. Uber Techs., Inc.*, 2021 WL 3539146, at *5 (S.D.N.Y. Aug. 11, 2021) (requiring dismissal be "self-

evidently" obvious). Under that standard, staying discovery is especially improper where the asserted dismissal issues are "complex and may benefit from the anticipated discovery." *Dobbs v. Bank of New York Mellon*, 2025 WL 2382318, at *1 (S.D.N.Y. July 21, 2025) (Vargas, J.). Given their complexity, "[i]n antitrust cases in particular, . . . dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Reiss v. Audible, Inc.*, 2025 WL 1654643, at *5 (S.D.N.Y. June 11, 2025); see *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 218 (S.D.N.Y. 2019) (similar).

Defendants cannot satisfy that exacting standard. The purported flaws in the complaint are hardly self-evident: the allegations detail the mechanics of the Cooperation Agreement; how Defendants achieved overbearing market power; how the Cooperative stifles competition across the defined markets; and how that has inflicted cognizable antitrust injury. *See* Compl. ¶¶ 113-212. It further describes how the Cooperative drove up the price of the limited capital Optimum has been able to raise outside the Cooperative. *Id*. ¶¶ 142-148. Defendants' contrary arguments are "complex" (not to mention wrong), which alone cuts against a stay. *Dobbs*, 2025 WL 2382318, at *1. Indeed, Defendants invoked the "complex nature of the issues presented in the Complaint" in obtaining a long extension for the very dismissal motion they now portray as obvious. Dkt. 50.

Defendants' own motion confirms why discovery should proceed. It characterizes (at 4) this suit as "unprecedented," because, per one exhibit, the Cooperative is *itself* unprecedented: a novel "band[ing] together" of "the world's most sophisticated creditors" in an "unusual display of unity." Dkt. 63-5 at 3-4. Defendants' assertion that the antitrust laws immunize such behavior is anything but "self-evident[]." *Golightly*, 2021 WL 3539146, at *5; see *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 6135113, at *3 (S.D.N.Y. Oct. 18, 2020) (denying a motion to stay where a case "raise[d] a novel issue"). And the "public commentary" they invoke (at 1 n.2, 4 n.7) is in fact a self-serving client alert from an aligned law firm, whose author admitted he "wouldn't necessarily be so strong as to say . . . this case is implausible" and that this is "one of the stronger types of cases that could be brought." Josh Brody & Kenneth Reinker, *Jane's LME Addiction* (Spotify, Jan. 13, 2026), https://perma.cc/3WB4-66T9. Such comments hardly warrant a stay.

The merits decisions Defendants cite (at 2) do not show otherwise. Those cases applied the principle that "creditors are entitled to negotiate jointly in bankruptcy." *United Airlines, Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 924 (7th Cir. 2005) (citing *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039 (2d Cir. 1982)). This case is different: it involves not joint negotiations over existing debts in bankruptcy, but a group boycott aimed at starving Optimum of future capital and forcing it *into* bankruptcy. Compl. ¶¶ 85-87, 124-125. The complaint explains at length why those distinctions matter. *Id*. ¶¶ 11, 201-208. After all, had the creditor-defendants in *United Airlines* or *Sharon Steel* "colluded with one another with respect to the[ir] *future* terms and prices," the plaintiffs would have "ha[d] a good antitrust theory." *United Airlines*, 406 F.3d at 924-25; see *Akanthos Cap. Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1277 (11th Cir. 2013) (Pryor, J., concurring) (applying those cases to hold that agreement "did not distort the secondary market" because "each noteholder was free" to "resell the notes to [the debtor] on individually negotiated terms"). Optimum alleges the very antitrust theory *United Airlines* blessed.

**II. Defendants Fail to Show Plaintiff's Requested Discovery is Overbroad.**

Defendants fare no better on the breadth-of-discovery prong. "Normal discovery," without more, "does not alone rise to the level of good cause" for a stay. *Guiffre v. Maxwell*, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016). The burden falls on Defendants to specifically "show why discovery would be burdensome." *Bennett*, 2023 WL 2021560, at *4; *see, e.g.*, *Bensmaine v. City of New York*, 2022 WL 3362188, at *2 (S.D.N.Y. Aug. 15, 2022) (noting defendants had "not explain[ed] (other than listing the number) what [was] unduly burdensome about" requests).

Defendants cannot carry that burden. Optimum's RFPs seek a limited universe of threshold information, like the Cooperation Agreement (RFP 1), details about its structure and membership (RFPs 2-6), and documents illuminating its effects on the relevant markets (RFPs 7-10). The modest volume of requests (10) and Defendants served (8) compare favorably to other cases where courts have rejected stays despite more expansive requests. *Cf. Bensmaine*, at *2 ("sixty-seven discovery demands"); *Mirra v. Jordan*, 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) ("119 discovery demands"). They are also more limited than the discovery sought in the only cited case in which this Court granted a stay. *Cf. Goldstein v. City Univ. of New York*, No. 25-cv-00475 (S.D.N.Y. Nov. 19, 2025) (Dkts 94-1, 94-2) (46 RFPs, 31 interrogatories). Defendants counter (at 3) only with "[v]ague and conclusory contentions," which "are not sufficient." *Mirra*, 2016 WL 889559, at *2. Indeed, their failure to "quantif[y] the volume of documents at issue or the expense associated with such discovery" is fatal to their position. *Dobbs*, 2025 WL 2382318, at *2.

But if the Court concludes that some of Optimum's requests are overbroad (they are not), the answer is cabining the scope of those requests – not entering a full stay. *See id.* (noting willingness to entertain "objections to individual discovery requests"); *Choudhury v. NYC Health & Hospitals Corp.*, 2025 WL 2977837, at *1-2, 6 (S.D.N.Y. Oct. 22, 2025) (tailoring partial stay of "deposition and expert discovery pending" dismissal motion). Optimum stands ready to address any overbreadth concerns through ordinary Rule 26 principles and negotiations. But Defendants are refusing to engage in that process. They have neither lodged specific objections to the proposed requests nor taken Optimum's invitation to offer a counterproposal. Dkt. 63-4 at 3.

Defendants' warning (at 3) about the potential burden on third parties does not change the calculus. Optimum's third-party request to identify the various Doe Entities – which Defendants do not oppose, Dkt. 63 at 2 n.3 – is uncontroversial. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 2020 WL 5518486, at *1 (S.D.N.Y. Sept. 11, 2020). Defendants give no reason to assume Optimum will seek unduly burdensome third-party discovery absent a stay.

Defendants similarly err in suggesting (at 3) that stays are more appropriate in the antitrust context. Courts in this District have suggested the opposite. *See supra* p. 2. Defendants' cases in this District do not set out any special discovery-stay rule for antitrust cases; they instead involved unusual circumstances where "discovery [was] likely to be broad and significant." *Spinelli v. Nat'l Football League*, 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015); *cf. Guiffre*, 2016 WL 254932, at *2 (distinguishing *Spinelli* as involving "herculean" discovery). Optimum's initial requests do not raise the same concerns, which the parties could address under Rule 26 in all events.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Honorable Jeannette A. Vargas
Page 4

### III. Defendants Fail to Prove a Stay Will Not Prejudice Optimum.

Defendants also misapply the prejudice prong. Because delaying discovery "impede[s] at least the 'just' and 'speedy' imperatives" of the Federal Rules, *Cambridge Capital*, 2021 WL 2413320, at *3, a stay prejudices a party whenever "[t]here is an interest in moving the case forward," *Elhassa v. Hallmark Aviation Services, L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022). Here, Optimum has such an interest. Defendants' continuing anticompetitive conduct is causing Optimum ongoing harm, Compl. ¶¶ 205-212, and threatens to "force it into bankruptcy," *id.* ¶ 11. That ongoing effect – a "threat to the continued existence of [Optimum's] business" – is a classic example of irreparable harm. *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 435 (2d Cir. 1993). Further, courts "presume that a stay will prejudice the non-movant" where "the parties are competitors in the marketplace," because shifts in competitive advantage can "not be easily remedied through monetary damages." *CDX Diagnostics, Inc. v. U.S. Endoscopy Group, Inc.*, 2014 WL 2854656, at *4-5 (S.D.N.Y. June 20, 2014). Optimum alleges such a competitive injury. As the complaint explains, "Defendants' cartel has prevented [it] from competing [against Defendants] in the market for its own debt." Compl. ¶ 18. That alleged injury – and Optimum's pursuit of a permanent injunction to prevent it – distinguishes this case from Defendants' lead authority. *Cf. Goldstein v. City Univ. of New York*, 2025 WL 3471131, at *2 (S.D.N.Y. Dec. 3, 2025) (Vargas, J.) (granting stay in employment-discrimination case where relief sought was principally "monetary damages" that did "not require immediate action").

Defendants argue (at 4) that a stay is justified because this case is in its "early stages." That proves too much: if true, it "would preclude a finding of prejudice in every case" and thus make discovery stays the norm. *Bensmaine*, 2022 WL 3362188, at *2. Nor is there anything unusual, *cf.* Mot. 3, about Optimum's proposed one-year fact discovery period. That discovery may later prove time-consuming counsels against delay and in favor of allowing the parties to start now. *See Elhassa*, 2022 WL 563264, at *2. That Optimum may amend its Complaint as of right also cuts *against* a stay. *See id.* (noting it undercuts "substantial grounds for dismissal"); *cf.* Mot. 4. Defendants cannot show now amendment would be futile. And their insistence that they do not have a list of Cooperative members would justify an amendment by Optimum anyway.

Finally, Defendants complain that discovery would cause *them* prejudice. But "the Court's inquiry necessarily does not include the burden on the defendants." *Kirschner v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 230183, at *3 (S.D.N.Y. Jan. 15, 2020); *see Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Ltd.*, 297 F.R.D. 69, 75 (S.D.N.Y. 2013) (same). Nor do Defendants' points track. While Defendants mischaracterize (at 4) this suit as a mere "litigation tactic," that does not show that Optimum's tailored discovery is unduly burdensome. It is not, as shown above.

Respectfully submitted,

/s/ *Joshua D. Branson*
Joshua D. Branson

cc:   All counsel of record (via ECF)