KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE

1615 M STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20036-3215

————

(202) 326-7900

FACSIMILE:

(202) 326-7999

March 5, 2026

**VIA ECF**

Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:  *Optimum Commc'ns, Inc., et al. v. Apollo Cap. Mgmt., L.P., et al.*, No. 25-cv-9785-JAV (S.D.N.Y.)

Dear Judge Vargas:

Plaintiffs Optimum Communications, Inc. and CSC Holdings, LLC ("Optimum") and Defendants Apollo Capital Management, L.P., Ares Management LLC, BlackRock Financial Management, Inc., GoldenTree Asset Management LP, J.P. Morgan Investment Management Inc., Loomis, Sayles & Company, L.P., Oaktree Capital Management, L.P., and PGIM, Inc. ("Defendants"), respectfully submit this letter in accordance with the Court's order that the parties "file a joint letter regarding the scope of proposed discovery." 2/19/26 Minute Entry.

On February 25, 2026, Plaintiffs provided a written proposal for how discovery should proceed while Defendants' motion to dismiss is pending. *See* Ex. A (letter). On March 2, 2026, Defendants served responses and objections to Plaintiffs' document requests. *See* Ex. B. Later that day, the parties met and conferred on the scope of proposed discovery but were unable to reach agreement. Their respective positions as of the date of this letter are set forth below.

**Plaintiffs' Position**

Plaintiffs' February 25 proposal (Ex. A) reasonably implements this Court's instruction that "some discovery [should] go forward in a limited fashion" while the motion to dismiss is pending. 2/19/26 Tr. 12:1-3. The proposal has two components for this phase. *First*, half of the RFPs (Nos. 1-2, 4, and 6-7) only require targeted "go-get" searches for responsive documents. Ex. A at 1-2. Defendants do not need to fully satisfy these requests under the proposal, but they should make meaningful progress. *Second*, for the other five RFPs (Nos. 3, 5, and 8-10), Defendants should run a focused ESI search across two custodians per Defendant. *Id.* at 2-3. That pared-down ESI search further eliminates any purported undue burden by using search terms to capture some, but far from all, responsive documents within two limited universes: (a) external communications among Defendants and/or their advisors, and (b) PowerPoint decks. *Id.*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Jeannette A. Vargas
Page 2

Defendants, by contrast, have agreed to produce hardly anything.  Their position boils down to this:  they will produce the Cooperation Agreement (RFP 1) and (a) for some requests (RFPs 1-7) look for documents to the extent any exist in "centralized" files – without assurances that would even yield anything – and (b) refuse to produce any documents for the rest (RFPs 8-10).  More fundamentally, Defendants argue that ESI searches are categorically inappropriate at this stage and refuse to produce documents in response to *any* ESI search.  True, Defendants estimate they will provide hit counts in roughly two weeks (seven weeks after Plaintiffs served the RFPs) to justify their burden claims, but that is of little value if Defendants continue to maintain that ESI productions are improper.

Defendants' position is unduly restrictive.  It would transform the Court's direction to "phase discovery" into nearly the "full stop of discovery" the Court already rejected.  2/19/26 Tr. 11:15-18.  Plaintiffs' proposal is superior, for three reasons:

*First*, Plaintiffs' proposal narrows their prior requests and resolves the burden concerns Defendants articulated at the hearing.  When the Court asked about "the volume of discovery," *id.* at 3:24-4:3, Defendants criticized three categories of requests:  (a) "all" communications between Defendants and their advisors (RFP 5); (b) "all" records of Cooperative meetings (RFPs 6-7); and (c) what Defendants incorrectly contend are requests for "virtually everything" regarding market share and market definition (RFPs 8-10).  *Id.* at 4:7-20.  Plaintiffs' February 25 proposal solves those concerns.  It narrows the requested searches to two custodians per Defendant with search terms, and seeks only (a) *external* communications between Defendants and/or their advisors, and (b) PowerPoint decks.  Defendants argue below that Plaintiffs "dramatically understate the breadth" of those search terms (which Plaintiffs have offered to confer over).  But they ignore two crucial ways the search is constrained:  use of domain limiters to capture only *external* communications, and PowerPoint decks.  Ex. A at 2.  There has been no showing, nor is it plausible, that such searches are unduly burdensome.

This is a far cry from the "full antitrust discovery" the Court warned against.  *Id.* at 12:3-4.  Indeed, Plaintiffs' proposal is far narrower than what other courts have permitted in similarly phasing antitrust discovery pending a motion to dismiss.  *See In re Currency Conversation Fee Antitrust Litig.*, 2002 WL 88278, at *3 (S.D.N.Y. Jan. 22, 2002) (staying non-custodial depositions but otherwise directing that "the parties are free to conduct document discovery," notwithstanding "the number of parties" and "substantial cost of discovery typical of antitrust cases of this magnitude"); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2017 WL 4573313, at *3 (D. Kan. Oct. 13, 2017) (similar).

*Second*, Defendants have offered nothing but "vague and conclusory contentions" about burden.  *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 2023 WL 1996920, at *2 (S.D.N.Y. Jan. 24, 2023).  It has been more than a month since Plaintiffs served their ten document requests and two weeks since the Court asked Defendants "specifically" to identify "estimates as to cost, volume of potentially responsive documents, estimates as to man-hours, as to how long it would take." 2/19/26 Tr. 5:7-9.  Yet Defendants still have not done so.  They have provided nothing concrete

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Jeannette A. Vargas
Page 3

to substantiate any burden objections.  *See Bennett v. Cuomo*, 2023 WL 2021560, at \*4 (S.D.N.Y. Feb. 15, 2023) (collecting cases denying stays without hard evidence of burden).

   *Third*, this Court directed the parties to negotiate "proper custodians and the like" with "hit reports in terms of burden."  2/19/26 Tr. 12:14-16.  That directive makes little sense if, as Defendants contend, ESI searches are categorically off-limits.  If Defendants flatly refuse to conduct any ESI searches, they must back-up their objections with concrete data about any purported "undue burden."  *Id.* at 12:13.  To be sure, Plaintiffs accept Defendants' representation that they will eventually provide hit counts.  But Plaintiffs cannot meaningfully "[d]iscuss what would be reasonable to proceed with," as the Court directed, without concrete metrics from Defendants and a commitment to produce documents once a reasonable hit count is achieved. *Id.* at 12:12-13.  So for this first "phase" of discovery to produce anything useful, Defendants must timely provide information on "what actually is the burdens." *Id.* at 13:7.  Thus far, Defendants have not done so and only provided their 2-week "estimate" today for the first time. The Court should hold them to that estimate and direct Defendants to provide hit counts and any other burden information by March 19.

   Finally, Named Defendants raise below that the Doe Defendants were not added to the First Amended Complaint.  But that is no reason to slow-walk discovery.  As counsel stated at the hearing, Plaintiffs cannot name the Doe Defendants until they receive "the list" of Cooperative members.  *Id.* at 8:24-25.  Plaintiffs still do not have that list.  Defendants' law firm advisor Akin Gump (also co-counsel in this case) apparently has it but has offered no concrete timeline by which it will be produced.[1]  Plaintiffs also requested names of former Steering Committee members to help identify potential Doe Defendants, but Named Defendants have not committed to provide that information.  Defendants should not be permitted to delay discovery by invoking issues with the Doe Defendants that they themselves have caused.

   For these reasons, the Court should adopt Plaintiffs' proposal and require Defendants to conduct a limited ESI search using the terms and custodians proposed in Exhibit A.[2]  If Defendants still claim this narrow proposal imposes undue burden, they should be ordered to supply hit counts by March 19, 2026 (two weeks from today).  As for the Doe Defendants, the parties should meet-and-confer over the most efficient way to add them to the case without causing undue delays once Plaintiffs have finally been able to identify them.

---

[1]   On February 17, Akin Gump committed to producing the list once a protective order is entered.  Plaintiffs sent Defendants a draft protective order three days later.  It took Defendants 10 days to respond, and Plaintiffs are still waiting on additional feedback.

[2]   Plaintiffs' proposed custodians were based on limited information before any discovery or the parties' Rule 26(a)(1)(A)(i) disclosures.  If Defendants believe alternative custodians (or search terms) are more appropriate, the parties should promptly confer over that proposal.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Jeannette A. Vargas
Page 4

**<u>Defendants' Position</u>**

At the February 19 pretrial conference, the Court expressed concern that "the exceeding burdens of antitrust discovery writ large would be unfair and prejudicial to the defendants" before "a motion to dismiss might be granted," especially considering that there was "potentially a very high volume of discovery being sought" by document requests that "seem fairly broad in nature." 2/19/26 Tr. at 11:2-9, 18-20. Consistent with the Court's guidance, Defendants have committed to search for and produce documents responsive to many of the pending RFPs from centralized and other readily accessible sources. In addition, Defendants are currently evaluating the wide-ranging and overbroad ESI search criteria Plaintiffs demand be utilized in this initial phase of discovery, and have committed to meet and confer further as soon as those results are available.

Plaintiffs' alternative narrative is not accurate. All eight named Defendants have agreed to search for and produce identified documents in response to seven of Plaintiffs' ten outstanding RFPs. Defendants believe that this is a reasonable and proportionate first step in the discovery process. RFPs 8 through 10 seek broad discovery on core antitrust issues such as market power and price effects, which is the precise type of discovery inconsistent with the "limited discovery" that the Court directed. Tr. at 12:6.

The ongoing disagreement between the parties centers on the timing and scope of custodial ESI searches. After nearly a week of silence following the February 19, 2026 conference, Plaintiffs sent a proposal to Defendants on February 25 setting out for the first time their position on the scope of the parties' initial phase of discovery. *See* Ex. A. Far from narrowing their previously issued RFPs, Plaintiffs seek to impose the burden and expense of seriatim ESI searches of email and other messages by the same parties and custodians: once now pursuant to the ESI protocol proposed in the February 25 letter, and again later in response to additional RFPs and search terms. This is certainly not what the Court had in mind by "limited discovery."

Plaintiffs demand the initial phase of limited discovery include production of documents in response to every single RFP (with respect to which Plaintiffs continue to dramatically understate the breadth), including "custodial ESI searches" for half of them (RFPs 3, 5, 8-10), each involving at least two custodians per Defendant (16 total), more than 10 facially overbroad search terms (such as "Optimum," "Altice," "CSC," "Co-op," and "cooperative"—the last two without any connection to Optimum), and numerous repositories of documents and communications (such as "custodians' work emails and messaging applications" and "shared drives and custodians' desktop"). Ex. A at 2-3. The February 25 letter also demands that each of the eight Defendants "provide hit counts by Monday, March 2," just three business days after Plaintiffs sent their proposal. Plaintiffs knew that was not reasonable nor realistic given the number, size, and complex e-discovery processes of Defendants. Given the breadth of Plaintiffs' proposal and delay in providing it to Defendants, Defendants estimate they will require approximately two additional weeks to complete the collection and search process required to be

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Jeannette A. Vargas
Page 5

in a position to provide reliable search results, after which they will meet and confer further with Plaintiffs.

Plaintiffs' present demands do not comport with the Court's direction at the initial pretrial conference to develop a reasonable plan for limited discovery. Plaintiffs have not made any meaningful effort to limit their demands since the conference. Instead, they demand that each of the eight Defendants engage in ESI searches using the broadest possible search terms across numerous sources of data. That Plaintiffs' proposed email searches "capture only *external* communications" does not somehow make their demands "constrained," because this essentially boils down to a request for all communications among the members of the Co-op *and* the Co-op's financial and legal advisors (PJT and Akin Gump, respectively). Nonetheless, Defendants have already committed to conduct meaningful document discovery and, despite the inefficiencies that would be created by serial ESI searches, will discuss the proposed search criteria further with Plaintiffs after completing their work to evaluate it. Defendants respectfully request that the Court permit the parties to complete the meet-and-confer process.

Finally, Plaintiffs have filed an amended complaint that makes numerous substantive amendments, but notably does not add any Doe defendants, requiring Defendants to file another motion to dismiss. Defendants understand that Plaintiffs intend to seek to amend their complaint a second time in the near future to add additional defendants. As a result, Defendants are being asked to conduct wide-ranging discovery without yet having seen the operative complaint.

Defendants remain willing to continue in good faith the meet-and-confer process with Plaintiffs. But ultimately the discovery burden imposed on Defendants prior to resolution of their motion to dismiss must be appropriately limited consistent with the Court's direction.

Respectfully submitted,

| | |
|---|---|
| /s/ *Joshua D. Branson* | /s/ *Kyle W. Mach* |
| Joshua D. Branson (*pro hac vice*) | Kyle W. Mach (*pro hac vice*) |
| KELLOGG, HANSEN, TODD, | SULLIVAN & CROMWELL LLP |
|    FIGEL & FREDERICK, P.L.L.C. | 550 Hamilton Avenue |
| 1615 M. Street, N.W., Suite 400 | Palo Alto, California 94301 |
| Washington, D.C. 20036 | Telephone: (650) 461-5600 |
| (202) 326-7900 | Facsimile: (650) 461-5700 |
| (202) 326-7999 (fax) | machk@sullcrom.com |
| jbranson@kellogghansen.com | |
| | |
| *Counsel for Plaintiffs* | *Counsel for Named Defendants* |

Enclosures:   Ex. A:  Plaintiffs' Phased Discovery Proposal (2/25/26)
                   Ex. B:  Defendants' Responses & Objections to Plaintiffs' RFPs (3/2/26)