**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OPTIMUM COMMUNICATIONS, INC.; CSC HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APOLLO CAPITAL MANAGEMENT, L.P.; ARES MANAGEMENT LLC; BLACKROCK FINANCIAL MANAGEMENT, INC.; GOLDENTREE ASSET MANAGEMENT LP; J.P. MORGAN INVESTMENT MANAGEMENT INC.; LOOMIS, SAYLES & COMPANY, L.P.; OAKTREE CAPITAL MANAGEMENT, L.P.; PGIM, INC.; Doe Entities #1-#1000.<br><br>    Defendants. | Case No. 25-cv-9785 |

**STIPULATION AND [PROPOSED] ORDER**
**REGARDING DISCOVERY PROCEDURE**

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

2

WHEREAS, the parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). The parties' cooperation includes identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues;

WHEREAS, the parties therefore enter into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I.    GENERAL PROVISIONS

1.    **Applicability**. The procedures and protocols set forth in this order shall govern the search for, disclosure of, and format of documents, tangible things, and ESI (collectively "discovery materials") produced for use in this litigation.

2.    **Limitations & Non-Waiver**. This order does not define the scope of production nor the relevance, discoverability, confidentiality, or admissibility of any particular discovery materials. Nothing in this order establishes any agreement as to either the temporal or subject-matter scope of discovery in this litigation. Compliance with this order does not constitute a waiver of any objection to the production of particular discovery materials, including as irrelevant, undiscoverable, inadmissible, unduly burdensome or not reasonably accessible, or privileged. Nothing in this order shall be construed to affect the authenticity or admissibility of any discovery materials, and all objections to authenticity or admissibility of any discovery material are

3

preserved. Except as specifically set forth herein, this Stipulation and Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of New York.

3.    **Prior Productions**. The production specifications set forth in this Stipulation and Order apply to Documents and ESI that are to be produced in the first instance in the above-captioned litigation. To the extent any producing party reproduces documents or ESI previously produced by any party or non-party during a pre-complaint investigation of the subject matter of this litigation, that party may reproduce such documents or ESI in the manner in which it was produced to that party. Further, to the extent any producing party reproduces documents or ESI produced to that party by a non-party during the course of this litigation, that party may reproduce such documents or ESI in the manner in which it was produced to that party.  No party is obligated to reformat a reproduction of any prior production in accordance with the production specifications in this Stipulation and Order.

## II.    PRESERVATION

1.    **Materials To Be Preserved**.  Each party will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  Upon mutual agreement of the parties, a party will modify its retention practices to ensure the preservation of potentially responsive documents and ESI.

2.    To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

      a.    Parties shall preserve non-duplicative, relevant information currently in their possession, custody, or control.

b.  Subject to and without waiving any protection described above, the parties agree that:

i.  The parties will endeavor to agree upon a date limitation for the preservation of ESI;

ii.  The parties will endeavor to agree upon a list of the types of relevant ESI they believe should be preserved and the custodians, for whom they believe relevant ESI should be preserved. The parties shall add or remove custodians as reasonably necessary.

3.  **ESI That Is Not Reasonably Accessible.** The following categories of ESI are not reasonably accessible in this litigation, and the parties will continue to meet and confer regarding any additional categories of information that are not reasonably accessible. This Paragraph is not intended to affect the parties' preservation obligations, and nothing in this Stipulation and Order prevents the parties from requesting documents or ESI in these categories upon a showing of good cause under Federal Rule of Civil Procedure 26(b)(2)(B).

a.  Back-up systems and tapes used for disaster recovery;

b.  Individual user data subject to routine disposition required by privacy regulations, except where such regulations do not require disposition of data subject to legal holds;

c.  Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

d.  Deleted, slack, fragmented, or unallocated data accessible only by forensics;

e.  Data stored in random access memory ("RAM"), temporary files, or

other ephemeral data;

f.   Online access data such as temporary or cache files, including internet history, web  browser cache and cookie files, wherever located;

g.   Data in metadata fields that are frequently updated automatically, such as last-accessed or last modified dates;

h.   Server, system, or network logs; and

i.   Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party that is duplicative of information that resides in a reasonably accessible data source.

4.   Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of documents or ESI are not reasonably accessible.

5.   **Preservation Does Not Affect Discoverability or Claims of Privilege**. By preserving documents and ESI for the purpose of this litigation, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

### III.   COLLECTION AND REVIEW

1.   **Cooperation**. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2.   The parties will meet and confer in good faith regarding search terms and/or use of technology-assisted review or similar tools, including any use of artificial intelligence tools  to identify responsive documents.  If a requesting party objects to the sufficiency of the producing

party's terms, the requesting party may propose modifications or a list of additional terms.

3.     **System Files.**  Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

4.     **Deduplication.**  Each side is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across custodians.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  To the extent that deduplication through MD5 hash values is not possible, the parties shall meet and confer to discuss other proposed methods of deduplication such as near duplication.  A producing party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as All Custodians.  In the event of rolling productions of documents or ESI, the producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by a producing party on an ongoing basis.

5.     **Filtering.**  If a producing party proposes to apply other filters to limit documents and ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the producing party shall advise the requesting party and the requesting and producing parties shall meet and confer regarding such additional proposed filters.

6.     **Threading.**  A side is permitted to produce only the most inclusive threads, or

more inclusive threads, as opposed to each individual thread. Threads are communications that contain prior or lesser inclusive communications. The most inclusive thread is one that contains all the prior or lesser-inclusive communications, including attachments, for that branch of the thread. Upon a reasonable request, a producing party will produce lesser inclusive iterations of previously produced threads to the requesting party.

## IV.    CLAIMS OF PRIVILEGE

1.    **Privilege Logs**. For documents withheld from production or produced in redacted form on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege or protection (collectively "privilege"), the producing entity shall prepare a summary log in Excel format that complies with Rule 26 of the Federal Rules of Civil Procedure and Rule 26.2(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

2.    **Rolling Privilege Logs**. The parties agree to provide rolling privilege logs. Privilege logs are due thirty (30) days after productions in response to a given set of document requests is substantially complete. The parties further agree to meet and confer regarding the production of a privilege log prior to any deposition(s) as necessary.

## V.    REDACTIONS

1.    **Initial Categories**. Discovery material may be redacted on the following bases: privilege and sensitive personally identifiable information.

2.    **Additional Categories**. If, during the course of discovery, the producing entity identifies other kinds of information that it has a reasonable basis for redacting, the parties will meet and confer before such redactions are made. If the issue cannot be resolved, the parties will seek resolution from the Court.

8

3.      Any redactions must be clearly visible on the face of the produced document (e.g., the parties should not use white boxes to make redactions on documents with a white background) and OCR searchable (e.g., labeled "Redacted").

## VI.      PRODUCTION FORMAT

1.      The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

## VII.     MISCELLANEOUS PROVISIONS

1.      **Amendment**. Nothing herein shall preclude the parties from seeking to amend this order, provided that the parties first meet and confer before seeking relief from the Court.

2.      **Integration/Appendices.** The following documents are incorporated herein by reference:

a.      "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.

9

Dated:  May 11, 2026

Respectfully submitted,

/s/ Kyle W. Mach

Kyle W. Mach (*pro hac vice*)
Rebecca L. Sciarrino (*pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone: (650) 461-5600
Facsimile: (650) 461-5700
machk@sullcrom.com
sciarrinor@sullcrom.com

Robert J. Giuffra, Jr.
Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
giuffrar@sullcrom.com
gluecksteinb@sullcrom.com

Renata B. Hesse (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
hesser@sullcrom.com

Abid Qureshi
Joseph Lee Sorkin
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
aqureshi@akingump.com
jsorkin@akingump.com

*Counsel for Defendants*

/s/ Joshua D. Branson

Joshua D. Branson (*pro hac vice*)
David L. Schwarz (*pro hac vice*)
Thomas G. Schultz (*pro hac vice*)
Kyle B. Grigel (*pro hac vice*)
Brenna L. Darling (*pro hac vice*)
Jarrod A. Nagurka (*pro hac vice*)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)
jbranson@kellogghansen.com
dschwarz@kellogghansen.com
tschultz@kellogghansen.com
kgrigel@kellogghansen.com
bdarling@kellogghansen.com
jnagurka@kellogghansen.com

*Counsel for Plaintiffs*

SO ORDERED this __15th__ day of __May__, 2026

_____
HON. JEANNETTE A. VARGAS
U.S. District Judge

10

## APPENDIX 1: PRODUCTION FORMAT

A.     **Entire Document**. Except for privileged material, the producing entity will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. Notwithstanding this paragraph, embedded links without attachments or references to linked documents which are not attached (by way of example only, a website on the public internet) need not be included.  However, upon receiving a document with embedded links, a party may reasonably request the linked material on an ad hoc basis. Attachments must be produced along with the document to which they are attached, regardless of whether they have been produced separately. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately.

B.     **Production Components**.  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1.     An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2.     An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3.     TIFF images; and

4.     Document level .TXT files for all documents containing extracted full text or OCR text.

11

5. Parent-child relationships will be maintained in production.

6. Full document families must be produced except (1) junk files and non-user created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection.

7. If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

C. **Production Media and Access Controls**. Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on encrypted external media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

D.    **Data Load Files/Image Load Files**.  All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.  The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file.  The total number of documents in a production should match the total number of records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

E.    **Metadata Fields**.  With the exception of the hard copy paper documents, which are separately addressed in paragraph L below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document to the extent reasonably practicable.  The parties are not obligated to populate manually any of the fields below if such fields cannot be systematically extracted from a document, with the exception of the following: (a)  BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) ALLCUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH, which should be populated by the party or the party's vendor.  The parties will make reasonable efforts to ensure that metadata fields

13

automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name[1] | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the document originated |
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order

| FROM | The name and email address of the sender of the email |
|---|---|
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| ORIGINATING PATH | File path of the file as it resided in its original environment |
| REDACTIONS | Indicate Yes if a document is redacted.  If no leave blank. |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations.  For instance, MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading.  (Microsoft application documents only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAILSUBJECT | Subject Line of email |
| TIMESENT | Time email was sent |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |

15

| RECEIVETIME | Time email was received |
|---|---|
| FILENAME | File Name of the edoc or email |
| TITLE | Any value populated in Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |
| WITHHELD PLACHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y". If not applicable leave blank. |
| TECHNICAL ISSUE PLACEHOLDER | To the extent a file is withheld on the basis of a technical issue, this field must be populated with a "Y". If not applicable leave blank. |

F.    **TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF image will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be

16

branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF forma, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing party retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats. Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

G.      **Color.**  A party that received a production may make reasonable requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).  All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons set forth in this Paragraph will not be unreasonably denied by the producing party.  If a producing party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

H.      **Text Files**.  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file.  Text files will not contain the redacted

portions of the documents.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

I.    **Native Files**.  Spreadsheets (e.g. MS Excel) and presentations (e.g. MS PowerPoint) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.  Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph E above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

J.    **Confidentiality Designation**.  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

K.    **Databases and Other Structured Data**.  The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party.  To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a party is constrained from producing responsive ESI because of a third-party license or because software

18

necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

L.     **Paper Documents**. A producing party may make paper documents available for inspection and copying in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) Beg Bates, (b) End Bates, (e) Custodian, (f) Confidentiality, and (g) Redacted. Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The parties will make reasonable efforts to unitize documents correctly. Where a document or a document group – such as folder, clipped bundle, or binder has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

M.     **Date and Time**. No party shall modify the date or time as contained in any original ESI. This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

N.     **Time Zone**. To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g. Pacific Standard Time) and the time zone shall be disclosed to the requesting party.

O.    **Auto Date/Time Stamps**. To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

P.    **Hidden Text**. ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

Q.    **Password-Protected, Encrypted, or Proprietary-Software Files**. With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall produce said documents with a placeholder TIFF image stating "Technical Issue." ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting party, and the parties shall meet and confer regarding the next steps, if any, with respect to such ESI.